UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 CR 50041-6 |
| | ) | Judge Iain D. Johnston |
| Nathaniel Clay, | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Nathaniel Clay has filed a second motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). For the following reasons, Mr. Clay's second motion [1157] is denied.

## BACKGROUND

On July 19, 2009, Mr. Clay pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute controlled substances, specifically more than one kilogram of heroin and more than 50 grams of crack cocaine, *see* 21 U.S.C. §§ 841(a)(1), 846. On November 11, 2010, Judge Kapala, who has since taken inactive senior status, calculated Mr. Clay's sentencing range to be 292 to 365, and imposed a within-Guidelines sentence of 320 months' imprisonment. Dkt. 452. The Seventh Circuit affirmed. *United States v. Block*, 705 F.3d 755 (7th Cir. 2013).

In November 2020 Mr. Clay filed motions under § 404(b) of the First Step Act to reduce his sentence based on retroactive changes to federal drug laws. He relied, in part, on the fact that some of his co-conspirators had already obtained sentence reductions when the district judge assigned to this case at the time granted their § 404(b) motions. This Court denied Mr. Clay's motion because, on balance, the sentencing factors of 18 U.S.C. § 3553(a) did not favor a sentence reduction. Dkt. 1043. Among Mr. Clay's arguments on appeal was that this Court had created an unwarranted sentencing disparity by denying his motion even though a different judge granted some of his co-conspirators' motions, but the Seventh Circuit affirmed. *United States v. Clay*, 50 F.4th 608 (7th Cir. 2022).

In September 2022, Mr. Clay filed a motion under 18 U.S.C. § 3582(c)(2) reduce his sentence based on changes to the U.S. Sentencing Guidelines. The Court granted his motion and reduced his sentence from 320 months to 290 months, within his amended Guidelines range. Dkt. 1107. His anticipated release date is now August 31, 2028. *See* https://www.bop.gov/inmateloc/ (last visited Oct. 23, 2024).

In May 2023, Mr. Clay filed a motion under 18 U.S.C. § 3582(c)(1)(A)(i) seeking a compassionate release because he suffers from end stage renal failure. The Court assumed without deciding that his end stage renal failure established an extraordinary and compelling reason under § 3582(c)(1)(A)(i), but denied the motion because the sentencing factors set out in 18 U.S.C. § 3553(a) did not favor a compassionate release. Dkt. 1122.

In February 2024 Mr. Clay filed a motion under 18 U.S.C. § 3582(c)(2) for a sentence reduction based on the U.S. Sentencing Guideline's recent changes to its assessment of status points when computing a defendant's criminal history points. The Court denied the motion because Mr. Clay's criminal history points did not include any status points, and so the changes to the Guidelines had no impact on his sentence. Dkt. 1134.

Now Mr. Clay has filed a second motion under § 3582(c)(1)(A)(i) for a compassionate release. Dkt. 1157. This motion reasserts two of the reasons for a compassionate release from his first motion—his end stage renal failure, and underlying medical conditions that place him at an increased risk of serious complications from COVID-19—and adds two more—his facility is contaminated with asbestos, and his sentence is unusually long and there is a gross disparity between his sentence that those of his co-conspirators who received sentence reductions after filing § 404(b) motions.

## ANALYSIS

A court has a limited ability to reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons" for a compassionate release, and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). The defendant bears the burden of establishing that he or she is entitled to compassionate release. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf, and then either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A).

The government concedes that Mr. Clay has exhausted his request for a sentence reduction based on his end stage renal failure, but contends that he never asked his warden for a release based on asbestos or an unusually long sentence. In his reply brief, Mr. Clay does not dispute that he exhausted only his request for a reduction based on his end stage renal failure. Accordingly, this Court proceeds only on his request based on his end stage renal failure, and is without jurisdiction to further address his request based on asbestos or an unusually long sentence.

The government also concedes that Mr. Clay's end stage renal failure is an extraordinary and compelling reason, even though it is being managed and he has been given no specific prognosis of life expectancy,[1] noting that U.S.S.G. § 1B1.13(b)(1) identifies end stage organ

---

[1] The government's concession is based on medical reports that Mr. Clay's glomerular filtration rate is about 6 mL/min, below the 15 mL/min rate that indicates end-stage renal disease according to the National Institutes of Health. Dkt. 1164 at 17.

disease as a medical condition that creates an extraordinary and compelling reason for a sentence reduction,   However, it argues that despite the extraordinary and compelling reason for a sentence reduction, the sentencing factors of 18 U.S.C. § 3553(a) do not favor one.

      The Court agrees that the § 3553(a) sentencing factors do not favor a sentence reduction.  The Court has now had three occasions to review these factors as to Mr. Clay.  As previously noted, Mr. Clay's offense was a very serious one.  He participated in a conspiracy that sold large quantities of dangerous drugs in the Rockford community.  He served the conspiracy as a runner, who facilitated the street-level sales.  He also distributed packaged heroin to other runners, and collected their proceeds for the organization.  In addition, Mr. Clay served as a dispatcher for the central telephone line, and was a straw purchaser for vehicles the organization used.  He helped enable, and then profited from, the addictions of others.  Co-conspirators reported that he was known to possess a firearm throughout his involvement in the conspiracy, and thus contributed to the risk of gun violence erupting during the course of the conspiracy.

      His offense of conviction followed a long history of earlier criminal convictions, the first when the defendant was just 17.  The previous terms of incarceration he served for some of those offenses, including for prior drug offenses, did not deter him from participating in this conspiracy, leading to the instant offense.  In fact, he committed the instant offense less than two years after his release from custody for an aggravated criminal sexual abuse offense.  In addition to the need to deter Mr. Clay, the Court notes that, as evident from its own criminal docket, drugs remain a scourge in the Rockford community and there continues to be a need to deter others from trafficking drugs.

      Mr. Clay notes that co-conspirators whom he contends were involved in more serious conduct than him have received sentence reductions that have now created unwarranted sentencing disparities.  But the Court already addressed § 3553(a)(6) when denying his § 404(b) motion, and remains convinced that a sentence that accounts for his Guidelines range, rather than one based on sentence reductions a different judge granted to some of his co-conspirators, is the proper means of avoiding unwarranted sentencing disparities, an approach the Seventh Circuit affirmed.  *See Clay*, 50 F.4th at 612-13.

      During his incarceration, Mr. Clay has used his time wisely on efforts to rehabilitate himself.  He has completed numerous courses, including a drug treatment program, drug education program, and courses developing skills that will serve him well upon his release, including typing and a commercial driver's license.  He has worked to obtain his GED, and at last report had little reported disciplinary history.  The Court already took these efforts into account when it granted his § 3582(c)(2) motion and reduced his sentence from 320 to 290 months.  *See* Dkt. 1107 at 3.

      The Court also considers the defendant's need for medical care.  *See* 18 U.S.C. § 3553(a)(2)(D).  Mr. Clay contends that only a transplant will cure his end-stage renal failure, that he is unlikely to receive one while incarcerated, and so he should be released so that he can receive his "treatment of choice."  Dkt. 1157 at 4.  But according to Mr. Clay's medical records, he receives dialysis treatment three times a week, sees a consulting nephrologist monthly, and his lab work and vitals are reviewed regularly by his renal team.  Dkt. 1167 at 4.  His nephrologist's

most recent report remarked that all of his lab data are "within desired range with the exception of hemoglobin which is 9.89, and Aranesp has already been adjusted per protocol." Dkt. 1168 at 356. He contends in his motion that dialysis has caused "wear and tear" on his body, and that he is having problems with "access points that will, in the future, cause him problems with his ability to participate in his required treatment." Dkt. 1157 at 14. But he points to no medical record to support those contentions, and his contentions seem to be contradicted by the records reporting that his condition is being controlled.

As for his reference to a greater risk of serious complications he faces if he contracts COVID-19, Mr. Clay has been vaccinated, *see* Dkt. 1167 at 169, his facility reports no open cases of COVID-19, *see* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Oct. 23, 2024) and therefore he has failed to establish that the risk he faces at MCFP Springfield is any greater than he would face elsewhere. *See United States v. Vaughn*, 62 F.4th 1071, 1071-72 (7th Cir. 2023).

While the monitoring and medical services he receives are not cures, according to the medical records they are adequately treating Mr. Clay's condition. And this is despite the fact that one doctor noted on July 29, 2024, that Mr. Clay "fairly often stops [hemodialysis] treatment at 3.5 hours instead of the 4 hours prescribed by his Nephrologist," and that he has been advised to "avoid signing off early during HD sessions." Dkt. 1165 at 1. The Court also notes that one basis upon which his warden denied compassionate release was that "after improving your fluid restrictions and early termination of dialysis sessions [you] did not submit your application [for a renal transplant] for re-evaluation." Dkt. 1157 at 2. Mr. Clay does not contend either in his motion or reply brief that he has since submitted for reevaluation.

In light of all of the information available to it and its balancing of the § 3553(a) factors, this Court concludes that the 290-month sentence Mr. Clay is serving remains the sentence that properly balances the relevant sentencing concerns, and it therefore declines to reduce his sentence further.

## CONCLUSION

For the reasons given, Mr. Clay's second motion for a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) [1157] is denied.

Date:  October 23, 2024    By:    _____
Iain D. Johnston
United States District Judge